**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
SENTRY INSURANCE A MUTUAL
COMPANY,

                  **Plaintiff,**

      -against-

BRAND MANAGEMENT INC.,
*also known as*
Budget Services, Inc.,

                  **Defendant.**
-----------------------------------------------------------x
SENTRY INSURANCE A MUTUAL
COMPANY,

                  **Plaintiff,**

      -against-

BUDGET SERVICES, INC., et al.,

                  **Defendants.**
-----------------------------------------------------------x

**MEMORANDUM**
**AND ORDER**

**10-CV-347 (ENV)**

**11-CV-3966 (ENV)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

     In 2010, plaintiff Sentry Insurance a Mutual Company ("Sentry") filed a complaint

against Brand Management, Inc. ("Brand"), <u>Sentry v. Brand</u>, 10-CV-347 (ENV) (the "Brand

Action"), in which it asserted, *inter alia*, a breach of contract claim against Brand. In August

2011, Sentry brought an action against Budget Services, Inc. ("Budget") and Budget's owner,

Hershel Weber ("Weber"), <u>Sentry v. Budget et al.</u>, 11-CV-3966 (ENV) (the "Budget

Action"), in which Sentry alleged claims against Budget and Weber that arose out of the same

facts as in the Brand Action. On January 19, 2012, the Honorable Eric N. Vitaliano, the

District Judge assigned to both cases, consolidated the Brand Action and Budget Action.

Currently pending before this Court are various pretrial motions in both the Brand Action and the Budget Action. The Court addresses each motion in turn below.

## BACKGROUND

In order to provide the proper context for this Court's rulings, it is helpful to briefly address the unique procedural posture of these two cases.

On January 27, 2010, Sentry filed the Brand Action, which arose out of two Workers' Compensation policies that Sentry issued to Brand (the "Policies"). See Complaint ¶¶ 5-6, Electronic Case Filing ("ECF") Document Entry ("DE") #1.[1] Months later, at an initial conference, this Court gave the parties until July 16, 2010 to amend the pleadings and join additional parties as of right -- a deadline that was memorialized in a scheduling order, pursuant to Rule 16 of the Federal Rules of Civil Procedure ("FRCP"). See Minute Entry (May 7, 2010) ("5/7/10 Minute Entry"), DE #6. Consistent with the Court's Rule 16 deadline, on June 30, 2010, plaintiff filed an amended complaint adding claims against a new defendant, Dynamic Claim Services, Inc. See Amended Complaint, DE #7.[2] Thereafter, the parties sought an extension of the discovery deadline. See Proposed Scheduling Order (Sept. 22, 2010), DE #13. Notably, no party sought to extend the July 16, 2010 deadline to add new parties or amend the complaint. See id. Discovery in the Brand Action closed on April 1, 2011. See Order (Sept. 27, 2010) ("9/27/10 Order"), DE #16.

---

[1] Unless otherwise indicated, all ECF references in this Memorandum and Order relate to the docket in the Brand Action.

[2] Dynamic Claim Services, Inc. eventually settled with Sentry and was dismissed from the Brand Action. See Stipulation of Discontinuance (Jan. 20, 2011), DE #33.

At the conclusion of discovery in the Brand Action, Judge Vitaliano set the matter down for a bench trial beginning on July 20, 2011.  See Scheduling Order (June 20, 2011).  On July 20, 2011, however, Brand informed Judge Vitaliano that it had voluntarily commenced bankruptcy proceedings, resulting in an automatic stay of the case.  See Minute Entry (July 20, 2011), DE #49.

Shortly thereafter, Sentry commenced the Budget Action, bringing claims against Budget (an entity related to Brand and named with Brand in the Policies) and against Weber as an alter ego of Budget and related entities.  See Budget Complaint (Aug. 17, 2011) ¶¶ 44-55, Budget DE #1.[3]  Fact discovery proceeded in the Budget Action.  See, e.g., Minute Entry (Nov. 8, 2011) ("11/8/11 Minute Entry"), Budget DE #15 (setting initial fact discovery deadline of April 27, 2012).  Eventually, after the Brand bankruptcy proceeding was dismissed, see Letter (Oct. 3, 2011), DE #53, Sentry moved to consolidate the Budget and Brand Actions, see Motion to Consolidate Cases (Dec. 2, 2011), DE #55, and Judge Vitaliano granted the motion on January 19, 2012.  See Order (Jan. 19, 2012).

Following consolidation, Sentry filed two motions in the Brand Action, seeking: (1) to amend its complaint against Brand a second time; and (2) to reopen discovery.  In addition, several discovery-related disputes arose between the parties in the Budget Action, which led to the motions currently pending before this Court.  The Court heard argument on the various motions at a settlement conference in the two actions on May 4, 2012.  See Minute Entry (May 4, 2012), DE #114.  On May 27, 2012, discovery in the Budget Action closed.  See Endorsed

---

[3]  Budget and Weber are sometimes referred to collectively herein as the "Budget Defendants."

Order (Feb. 23, 2012), DE #65.

The Court will first address the pending motions in the Brand Action, followed by the

outstanding discovery motions in the Budget Action.

**BRAND ACTION**

**I.      Sentry's Motion to Amend**[4]

Sentry seeks to amend its complaint in the Brand Action, pursuant to Rule 15 of the

FRCP.  See Letter Motion for Premotion Conference (Apr. 3, 2012) ("4/3/12 Pl. Mot."), DE

#75.  In particular, Sentry moves to (1) add Weber as a defendant, so that it may hold Weber

liable as an alter ego, and (2) assert additional facts to bolster its unjust enrichment claim.  See

id.  Both Brand and the Budget Defendants oppose Sentry's motion.  See Budget Response to

Motion Letter (Apr. 9, 2012) ("4/9/12 Budget Opp."), DE #78; Brand Response in Opposition

---

[4]  As a preliminary matter, and based on its review of applicable case law, this Court
concludes that it is appropriate to issue its ruling on the motion to amend as a Memorandum
and Order, rather than a Report and Recommendation.  Although the Second Circuit has not
yet definitively ruled on the issue, but cf. Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir.
2007) (indicating in dictum that a motion to amend a complaint is "nondispositive" and
governed by Fed. R. Civ. P. 72(a)); Kilcullen v. N.Y. State Dep't of Transp., 55 F.App'x
583, 584 (2d Cir. 2003) (applying Rule 72(a) standard to challenge to magistrate judge's denial
of motion to amend), the "weight of authority" in this Circuit treats motions to amend
pleadings as nondispositive and subject to review under Rule 72(a) of the Federal Rules of
Civil Procedure -- at least where the ruling does not involve a denial of leave to amend that
foreclose a party from asserting potential claims.  See Wilson v. City of New York, No. 06-
CV-229(ARR)(VVP), 2008 WL 1909212, at *3-4 (E.D.N.Y. Apr. 30, 2008) (collecting
cases).  In particular, courts have routinely applied the "clearly erroneous" standard of review
where, as here, "the ruling is based on procedural grounds," such as the movant's failure to
satisfy the "good cause" requirement of Rule 16 of the Federal Rules of Civil Procedure.  See,
e.g., Oppenheimer & Co. Inc. v. Metal Mgmt., Inc., No. 08 Civ. 3697(LTS)(FM), 2010 WL
743793, at *1 (S.D.N.Y. Mar. 2, 2010) (citing Sokol Holdings, Inc. v. BMB Munai, Inc., No.
05 Civ. 3749(KMW)(DCF), 2009 WL 3467756, at *3-4 (S.D.N.Y. Oct. 28, 2009)).

to Motion Letter (Apr. 9, 2012), DE #80.[5]

Typically, once an answer is served, Rule 15 allows a plaintiff to amend its complaint "only with the opposing party's written consent or the court's leave," Fed. R. Civ. P. 15(a)(2), and a court should "freely give" leave to amend "when justice so requires." Id.; Anderson News, LLC v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Nevertheless, where, as here, the Court has set a scheduling order pursuant to Rule 16, the Court must first address whether the party seeking to amend has shown "good cause" for modifying the scheduling order. See Fed. R. Civ. P. 16(b)(4); Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 243-44 (2d Cir. 2007). One purpose of Rule 16 is to "offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983)). If the party seeking the amendment satisfies the "good cause" standard of Rule 16, the Court must then determine whether the movant also meets the liberal standards of Rule 15. See Kassner, 496 F.3d at 244.

"Whether good cause exists turns on the diligence of the moving party." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotations and citations omitted). A party is not diligent if a request to reopen discovery is based on information "that the party knew, or should have known," in advance of the deadline sought to be extended. See Sokol

---

[5] On August 1, 2012, this Court denied Sentry's request for a premotion conference on its proposed motion to amend. See Order (Aug. 1, 2012), DE #135. In lieu of a premotion conference, the Court invited the parties to submit supplemental briefing by August 8, 2012. See id. Neither side has availed itself of that opportunity.

Holdings, Inc. v. BMB Munai, Inc., No. 05 Civ. 3749 (KMW) (DF), 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (collecting cases), aff'd, 2009 WL 3467756 (S.D.N.Y. Oct. 28, 2009).

The parties erroneously analyze Sentry's motion to amend under Rule 15 standards. See 4/3/12 Pl. Mot. at 2-3; 4/9/12 Budget Opp. at 2. Where, as here, a Rule 16 scheduling order has been entered, the Court in the first instance must determine whether the party seeking to amend has met the "good cause" requirement of Rule 16. Pursuant to this Court's May 7, 2010 scheduling order in the Brand Action, the parties had until July 16, 2010 to amend their pleadings and join additional parties. Sentry did not move to amend its complaint until April 3, *2012* -- almost two years after the deadline to amend had passed. Sentry's motion is silent as to when it uncovered the facts underlying its proposed amendments. In short, there is no factual basis for a finding by this Court that Sentry acted diligently in seeking to amend. Therefore, Sentry has not shown good cause under Rule 16 for amending its complaint so late in the litigation, which, notably, was originally deemed trial ready as of July 2011. Therefore, the motion to amend the Brand complaint is denied.

## II.    Sentry's Motion to Reopen Discovery

Sentry also moves to reopen discovery in the Brand Action, even though discovery in that case closed sixteen months ago, on April 1, 2011. See Letter Motion for Discovery (Apr. 9, 2012) ("4/9/12 Pl. Mot."), DE #77; 9/27/10 Order. In particular, Sentry seeks written discovery from Brand related to its alter ego claim against Weber in the Budget Action. See

4/9/12 Pl. Mot. at 2.[6]  Sentry cites no case law in support of its request.  See id.

The Court denies Sentry's motion.  As noted above, a discovery deadline that is included in a Rule 16 scheduling order shall not be modified except upon a showing of "good cause."  Fed. R. Civ. P. 16(b).  "Whether good cause exists turns on the diligence of the moving party."  Holmes, 568 F.3d at 335.  A party is not diligent if a request to reopen discovery is based on information "that the party knew, or should have known," in advance of the deadline sought to be extended.  See Sokol Holdings, 2009 WL 2524611, at *8.

As defendant Brand notes in its opposition, Sentry offers no excuse for having failed to serve this discovery on Brand prior to April 1, 2011.  See Reply in Opposition to Motion to Reopen Discovery at 2, DE #102.  In fact, Sentry provides no information at all regarding when it first became aware of its potential alter ego claim against Weber in the Brand Action.  At the very least, Sentry was on notice of the alter ego theory by August 2011, when Sentry filed an alter ego claim against Weber in the Budget Action.  Even assuming *arguendo* that Sentry was not on notice of the facts prior to that time, Sentry plainly was less than diligent in waiting eight months before making its application to reopen discovery.  Since Sentry does not attempt to justify its belated motion or otherwise address why this discovery was not conducted prior to the April 1, 2011 discovery deadline, this Court denies Sentry's application to reopen discovery in the Brand Action.  See Gotlin v. Lederman, No. 04-CV-3736 (ILG) (RLM), 05-CV-1899 (ILG) (RLM), 2007 WL 1429431, at *2 (E.D.N.Y. May 7, 2007) ("[A]bsent a sufficient justification for the movant's delay, the Court should decline to grant an application

---

[6]  Sentry also argues that the discovery sought relates to its proposed alter ego claim against Weber in the Brand Action, but, for the reasons stated *supra* pp. 4-6, Sentry has been denied leave to amend to add this claim.

-7-

to reopen discovery.") (citation omitted).

**BUDGET ACTION**

**I.      Sentry's March 30, 2012 Motion For A Compulsion Order and Sanctions**

In January 2012, a dispute arose between Sentry and the Budget Defendants concerning Sentry's entitlement to documents related to non-party entities that were associated with defendant Weber and were insured under the Policies (the "Insured Weber Entities").  See, e.g., Motion for Discovery Conference (Jan. 6, 2012), Budget DE #19.  On February 1, 2012, after hearing argument on the matter, the Court ruled that "information and documentation pertaining to [the Insured Weber Entities] [we]re discoverable," and ordered the Budget Defendants to produce the demanded discovery of the Insured Weber Entities by February 24, 2012.  See Minute Entry (Feb. 1, 2012) ("2/1/12 Order"), Budget DE #32.  The Court added that, if Weber claimed "not to have possession, custody or control over the documentation of a particular entity," then Weber was directed to "provide a statement to that effect under oath or affirmation."  Id. at 1-2.  The Court also ordered the Budget Defendants to produce Budget-related information, including, but not limited to, "the contract between Brand and Budget" and "redacted copies of Weber's and Budget's tax returns."  Id. at 2.

Sentry now asks this Court to impose monetary sanctions on Budget and Weber as a result of their failure to comply with the Court's 2/1/12 Order.  See Letter Motion for Sanctions (Mar. 30, 2012) ("3/30/12 Pl. Mot."), DE # 71.  In particular, Weber never produced redacted copies of his tax returns, in direct violation of the 2/1/12 Order.  See id. at 2.  In addition, although Weber and Budget produced, by February 24, 2012, a small fraction of the documents concerning some of the Insured Weber Entities, Weber did not provide the

requisite affidavit. See id. As of this date, Weber still has not provided the affidavit referenced in the Court's 2/1/12 Order, even though it appears that substantial documents related to the Insured Weber Entities remain outstanding. See Status Report Regarding Discovery Disputes (Aug. 2, 2012), DE #136. According to Sentry, Weber did provide an affidavit attesting to the fact that there are "no cont[r]acts *in existence* between Budget and [Brand]," 3/30/12 Pl. Mot. at 2 (emphasis in original) -- a statement from which Sentry infers that the Budget Defendants are withholding from production contracts that at one time were in force. See id.

In addition to moving for monetary sanctions in the form of attorney's fees, Sentry requests that this Court order the Budget Defendants to comply with the 2/1/12 Order. See 3/30/12 Pl. Mot. at 2.

### A. Compliance with the 2/1/12 Order

The Budget Defendants' opposition does not dispute Sentry's allegation that Weber failed to produce his redacted tax returns, as ordered by this Court. See generally Response in Opposition to Letter Motion for Sanctions (Apr. 11, 2012) ("4/11/12 Def. Opp. & Mot."), DE #83.[7] As for the untimely and apparently inadequate production of documents relating to the Insured Weber Entities, Budget and Weber make no attempt to explain why they failed to produce all the information by February 24, 2012. The only excuse they offer relates to a discussion between counsel allegedly concerning the time and effort it would take to review

_____

[7] Pursuant to this Court's directive, "on pain of sanctions," at a May 4, 2012 settlement conference, the Budget Defendants filed, *ex parte* on ECF, Weber's unredacted tax returns for 2007-2010, but have not produced them in redacted form to Sentry. See Sealed Weber Tax Returns, DE #115.

certain bank checks, but the Budget Defendants gloss over the fact that this discussion took place on March 22, 2012 — nearly a month after the deadline for production had already passed. See id. at 2.[8] Tellingly, the Budget Defendants never requested an extension of the Court's February 24, 2012 deadline, nor have they produced any additional documents in the nearly five months since that discussion, other than a series of bank checks and statements.

The Budget Defendants have violated and continue to violate this Court's 2/1/12 Order. On pain of sanctions, including but not limited to monetary sanctions and/or entry of default judgments against them, Budget and Weber must comply with the 2/1/12 Order no later than August 22, 2012. This includes producing the redacted tax returns of Weber and responsive discovery relating to the Insured Weber Entities. Budget is further directed to produce by that same date any contract (whether or not presently in force) between Budget and Brand. In addition, on August 22, 2012, Weber must provide an affidavit or affirmation attesting to the fact that he has produced all responsive documents in his possession, control or custody. If no contract ever existed between Brand and Budget, Weber's sworn statement must also include confirmation of that fact. Failure to comply with this order may result in a finding of contempt.

### B. Attorney's Fees

Pursuant to Rule 37(b)(2)(C) of the FRCP, if a party fails to obey a court order to provide or permit discovery, "the court *must* order the disobedient party, the attorney advising

---

[8] Sentry's counsel disputes the characterization of this conversation by counsel for the Budget Defendants, insisting that defense counsel informed him on March 22, 2012 that "there were no additional documents to produce, and that [defense counsel] would submit an affidavit from Weber to that effect." Sentry Reply to Response to Letter Motion for Sanctions (Apr. 17, 2012) at 2, DE #107.

that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). Absent sufficient justification, an award of fees under Rule 37(b) is mandatory. See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1177 (2d Cir. 1988); Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic, No. 10 Civ. 5256(KMW), 2011 WL 4111504, at *9-10 (S.D.N.Y. Sept. 13, 2011); Robbins & Myers, Inc. v. J.M. Huber Corp., No. 01-CV-201S(F), 2010 WL 3992215, at *5 (W.D.N.Y. Oct. 12, 2010) (noting that a fee award under Rule 37(b) "is not a matter of judicial discretion, but is required, absent substantial justification").

Here, the Budget Defendants offer no excuse for Weber's failure to have produced his unredacted tax records, let alone a substantial one. Moreover, the Budget Defendants do not satisfactorily explain why they did not produce all Insured Weber Entities discovery by February 24, 2012, as the Court ordered. Consequently, Sentry's request that the Budget Defendants pay the attorney's fees incurred by Sentry as a result of their violation of the 2/1/12 Order is granted.

Sentry is directed to confer with the Budget Defendants in an effort to reach agreement as to a reasonable amount of attorney's fees and costs incurred by Sentry as a result of the Budget Defendants' failure to comply with the 2/1/12 Order. If the parties cannot agree on a specific amount, then plaintiff may submit an application for fees, with relevant time-records and documented expenses, no later than August 27, 2012. The Budget Defendants' opposition thereto must be filed by August 31, 2012.

## II.     Sentry's Motion to Compel Tax Records

As noted above, the Court's 2/1/12 Order directed the Budget Defendants to produce redacted tax returns of Budget and Weber. See 2/1/12 Order at 2. At that time, the Court declined to compel the Budget Defendants to produce tax returns of the Insured Weber Entities Entities. See id. During the hearing concerning Sentry's request, the Court noted that there was "a presumption against disclosure of tax returns" and that "the party seeking the tax returns has the burden of showing not only relevance but that the information sought is not available through other means." See Hearing Transcript (Feb. 1, 2012) ("2/1/12 Tr.") at 9-10, Budget DE #39. Therefore, Court denied, without prejudice, Sentry's request for the Insured Weber Entities' tax returns "because it may well be that production of . . . other specific . . . non-tax return [] financial records will provide plaintiff with the information it needs in connection with its [theory] of domination and alter ego." 2/1/12 Tr. at 10.

Sentry now renews its motion to compel the production of the Insured Weber Entities' tax returns. See Letter Motion to Compel Production (Apr. 10, 2012) ("4/10/12 Pl. Mot."), DE #81. Sentry also requests that Weber be compelled to produce unredacted tax returns, noting that Weber has failed to even produce his *redacted* tax returns, as required by the 2/1/12 Order. See id. Finally, although Budget previously provided Sentry with redacted copies of its tax returns, Sentry moves to compel Budget to produce its unredacted tax returns, as Sentry claims that the Budget returns are so heavily redacted that they are "virtually unusable." See id. at 2.

The Budget Defendants object to Sentry's motion to compel production of the tax returns of the Insured Weber Entities, as well as the unredacted tax records of Budget and

Weber.  See Response in Opposition to Letter Motion to Compel (May 9, 2012) ("5/9/12 Def. Opp."), DE #117.[9]  The Budget Defendants argue, *inter alia*, that they should not be compelled to produce tax returns of the Insured Weber Entities because "[t]he only claim for relief under the alter ego theory of liability presently pending before this Court is with respect to Weber being alleged to have an alter ego liability with respect to Budget."  See id. at 2. The Budget Defendants ignore the fact that during a previous hearing, this Court swiftly rejected this theory.  See 2/1/12 Tr. at 7-9 (noting that, "in fact, the alter-ego theory in the complaint is not limited to Budget and it's not even limited to Brand and Budget").

In the alternative, the Budget Defendants argue that most of the information contained in a corporate tax return (such as those of the Insured Weber Entities) is irrelevant to an alter ego claim; they note that Sentry's financial expert does not assert that he requires tax returns in conducting his alter ego analysis.  See 5/9/12 Def. Opp. at 2.[10]  Sentry counters that Budget should not be able to cherry-pick which portions of the tax returns are relevant to an alter ego claim, and that Budget's proposed selections are "wholly insufficient."  See Reply in Support of Motion to Compel (May 11, 2012), DE #118.

---

[9]  The Budget Defendants' argument that Sentry violated Rule 26(f) of the FRCP by seeking this discovery in late October 2011, prior to a Rule 26(f) discovery conference, is too little, too late.  See 5/9/12 Def. Opp. at 3 (citing Desilva v. North Shore-Long Island Jewish Health Sys., No. CV-10-1341 (JFB) (ETB), 2010 WL 3119629 (E.D.N.Y. Aug. 9, 2010)).  The Budget Defendants waived this argument by responding (albeit tardily) to Sentry's requests in December 2011 and by failing to raise the issue during the February 1, 2012 discovery dispute hearing.

[10]  Tellingly, the Budget Defendants do not address the scope or relevance of an individual tax return, such as Weber's, nor do they explain why they failed to produce Weber's redacted tax returns.  See discussion *supra* pp. 10-11 (imposing sanctions for Weber's failure to comply with 2/1/12 Order).

Sentry's motion for production of the entire tax returns is granted in part and denied in part. First, Sentry only offers a conclusory argument as to relevancy, a defect that is amplified by the complete lack of case law citations to support its motion. The Court's own research, however, has revealed that decisions in the Second Circuit have recognized that corporate tax returns are relevant to an alter ego/corporate veil analysis, and, in particular, to whether the dominated entity observed corporate formalities (i.e., by filing its own separate tax return) and whether that entity was adequately capitalized. See, e.g., Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 16 (2d Cir. 1996) (tax return revealed no capitalization); Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 141 (2d Cir. 1991) (in considering whether to pierce the corporate veil, jury may look to whether entity properly filed tax return); Feitshans v. Kahn, No. 06 Civ. 2125(SAS), 2007 WL 2438411, at *5 (S.D.N.Y. Aug. 22, 2007) (noting that allegedly dominated entities filed separate tax returns).

Thus, the tax returns of Budget, Weber and the Insured Weber Entities are relevant, but to what degree is unclear. While Sentry complains that the unredacted portions selected by Budget are inadequate, Sentry makes no attempt to particularize the additional information it requires, but instead vaguely alludes to its need for "basic financial numbers necessary to understand the transactions between the company and Mr. Weber and the [Insured Weber Entities]." See Email by Stephen Harris (Apr. 6, 2012), attached as Ex. A to 4/10/12 Pl. Mot. However, since the time Sentry filed this motion, this Court has ordered the accountant for the Budget Defendants to produce his workpapers, and, thus, Sentry presumably is now in possession of financial documents that substantially overlap with the information contained in

the disputed tax returns.  See discussion *infra* pp. 15-18.

Accordingly, the Court denies Sentry's motion to compel the production of *unredacted* tax returns for Budget, Weber and the Insured Weber Entities.  It will, however, compel the production of *redacted* tax returns for the Insured Weber Entities that are in the custody, control or possession of the Budget Defendants, to be produced no later than August 22, 2012.  To the extent that the Budget Defendants do not have all of the Insured Weber Entities' tax returns in their possession, custody or control, Weber must provide a statement under oath to that effect by August 22, 2012, and must state whether those documents exist and, if so, where they are located.

## III.    Sentry's Motion to Reopen The Deposition of Jacob Rosenfeld

Jacob Rosenfeld ("Rosenfeld"), the accountant for Weber, Budget and the Insured Weber Entities, was subpoenaed by Sentry to appear and produce documents at a deposition on May 23, 2012.  See Letter Motion for Leave to Reopen Deposition (July 25, 2012) ("7/25/12 Pl. Mot.") at 1, DE #127.  Rosenfeld, who was represented by Budget's counsel for purposes of the deposition, appeared on May 23, 2012, but did not bring with him any of the subpoenaed documents (hereinafter, the "Rosenfeld Documents").  See id.  Litigation ensued over whether Sentry was entitled to the Rosenfeld Documents, and, on June 19, 2012, this Court granted Sentry's motion to compel their production.  See Order (June 19, 2012), DE #126.

Having now reviewed the Rosenfeld Documents, Sentry seeks leave to re-examine Rosenfeld at a second deposition.  See 7/25/12 Pl. Mot. at 2-3.  In Sentry's application, it points to new issues raised by Sentry's review of the Rosenfeld Documents, including, but not

limited to, detailed financial statements and a previously undisclosed offshore bank account. See id. at 2.

In opposition, Rosenfeld and the Budget Defendants (all of whom are represented by the same counsel) argue that, because Sentry had sufficient information concerning transfers of funds between Weber, Brand, Budget and the Insured Weber Entities prior to Rosenfeld's first deposition, Sentry waived its right to depose Rosenfeld on those matters at a second deposition, even if the transfers are referenced in the Rosenfeld Documents. See Response in Opposition to Letter Motion to Reopen Deposition (July 30, 2012) at 2-3, DE #132. Moreover, they blame Sentry for Rosenfeld's failure to produce the Rosenfeld Documents at his first deposition: Sentry's counsel reportedly did not immediately return a phone call from Rosenfeld, on the eve of the deposition, requesting assistance with transportation of the documents. See id. at 4. In addition, Rosenfeld and the Budget Defendants object to any deposition questions concerning a purported offshore account, on the ground that Sentry has refused to pinpoint which of the Rosenfeld Documents concerns such an account. See id. at 6-7. Finally, they request that, if the Court is inclined to reopen Rosenfeld's deposition, the Court should (1) limit the deposition to two hours; (2) direct Sentry to pay for round-trip car service transportation from Rosenfeld's home in Spring Valley, New York to the deposition in New York City; (3) condition any inquiry as to an offshore account on Sentry's production of the offshore-account-related documents to Budget's counsel at least five business days prior to the deposition; and (4) limit Sentry's questions at the deposition to those "directly related to the documents which [Rosenfeld] produced." See id. at 7-8.

A person who has previously been deposed in a matter may be deposed again, but only

with leave of the court. See Fed. R. Civ. P. 30(a)(2)(A)(ii). Leave should be granted to the extent that doing so is consistent with the factors set forth in Rule 26(b)(2), such as "whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit." Ganci v. U.S. Limousine Serv., Ltd., No. CV 10-3027 (JFB)(AKT), 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) (collecting cases). "Courts will typically reopen a deposition where there is new information on which a witness should be questioned." Id. (citations omitted).

The Court grants Sentry's motion to reopen the Rosenfeld deposition for the limited purpose of questioning him about the Rosenfeld Documents, which Rosenfeld unjustifiably failed to produce at his first deposition. See id. ("Where the deposition is reopened because of newly discovered information, the questioning of the witness is limited to those questions relating to the newly produced information."). Although the questions must relate to the Rosenfeld Documents, Sentry is permitted to compare the Rosenfeld Documents with other documents in the record for purposes of reconciling various transfers. See 7/25/12 Pl. Mot. at 2 (arguing that Sentry has yet to have an opportunity to question Rosenfeld about "potential discrepancies between [the Rosenfeld Documents] and the deficient financial documents previously produced by Budget and Weber").

The Court will not require Sentry to disclose to counsel for Budget, Weber and the witness, in advance of the deposition, which of the Rosenfeld Documents support Sentry's assertion that an offshore account exists. The attorney for Budget, Weber and Rosenfeld has had access to the Rosenfeld documents and is capable of conducting his own review and

assessment of them.  Sentry should not be required to reveal his attorney work product under these circumstances.  See In re Grand Jury Subpoenas Dated October 22, 1991 and November 1, 1991, 959 F.2d 1158, 1166-67 (2d Cir. 1992) ("[W]here a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be, even third-party documents may be protected" by attorney-work product.) (collecting cases); see also Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985) ("In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case.") (internal quotation and citation omitted).

Finally, the Court declines to impose on Sentry the transportation costs for Rosenfeld's second deposition, which will be limited to three hours and must be completed no later than September 14, 2012.  The need for this second deposition stems solely from Rosenfeld's failure to have made arrangements with his own attorney to transport the Rosenfeld Documents to his first deposition.  Sentry should not have to bear the costs of Rosenfeld's noncompliance.

IV.     **The Budget Defendants' Motion for Sanctions and A Protective Order**

Not to be outdone, Budget and Weber, in opposing Sentry's March 30, 2012 motion for sanctions, see generally 3/30/12 Pl. Mot., DE #71, affirmatively move for their own relief. See 4/11/12 Def. Opp. & Mot. at 3-6.  Namely, they seek (1) unspecified sanctions against Sentry for allegedly withholding documents; and (2) a protective order with respect to the March 16, 2012 discovery demands served on Brand, Budget and Weber.  Id.

A.     **Sanctions for Withholding Documents**

On February 22, 2012, more than six months after the case was filed, the Budget

Defendants filed their First Request for the Production of Documents (the "Budget Request"), attached as Ex. B to 4/11/12 Def. Opp. & Mot. In the instant motion, Budget and Weber seek sanctions because (i) Sentry produced documents responsive to the Budget Request "two days" prior to the deposition of Sentry's Rule 30(b)(6) witness, Scott Miller ("Miller"); and (ii) Sentry allegedly failed to produce the file of Sentry's "financial analysis department." See id. at 4. Budget and Weber do not articulate what "discovery sanctions" they seek. See 4/11/12 Def. Opp. & Mot. at 1 (requesting only that the court "impose sanctions"); Reply Responding to Sentry Opposition (Apr. 24, 2012) at 14, DE #110 (requesting, without more, that the court "[a]ward[] sanctions" against Sentry).

The Court will first address the last-minute nature of Sentry's production of documents prior to the Miller deposition. Sentry's response to the Budget Request was due on March 21, 2012. See Letter Brief in Opposition to Defendants['] Request for Discovery Sanctions (Apr. 20, 2012) ("4/20/12 Pl. Opp.") at 2, DE #108. On March 21, 2012, Sentry responded to the Budget Request by identifying responsive documents included in its prior production to Budget. See id. That same day, Sentry made an initial production of 156 pages of documents, which it then supplemented with two additional productions – one consisting of 52 pages on April 2, 2012 and one consisting of 625 pages on April 3, 2012. See id. The Miller deposition was scheduled to begin on April 5, 2012. Id.

Rule 37(c)(1) of the FRCP authorizes the Court to impose sanctions for a party's failure to timely supplement a discovery response. See, e.g., Haas v. Del. & Hudson Ry. Co., 282 F.App'x 84, 85-86 (2d Cir. 2008); Kosher Sports, Inc. v. Queens Ballpark Co., No. 10-CV-2618, 2011 WL 3471508, at *12 (E.D.N.Y. Aug. 5, 2011). Courts enjoy broad discretion in

deciding whether to sanction a party for a discovery violation pursuant to Rule 37(c).[11]  See

Design Strategy, Inc. v. Davis, 469 F.3d 284, 294 (2d Cir. 2006).  Here, other than Budget's

counsel's assertion, nothing in the record reflects that Sentry acted in bad faith in producing

documents on a rolling basis, following its initial production on March 21, 2012.

Furthermore, it appears that Budget's counsel was able to review the documents prior to the

Miller deposition and even used the documents as exhibits in questioning Miller.  See 4/11/12

Def. Opp. & Mot. at 4; 4/20/12 Pl. Opp. at 3.  Thus, the Court is perplexed as to how Budget

was prejudiced by the rolling production, especially in light of the fact that Budget never

requested that the Miller deposition be postponed to enable it to review Sentry's document

production.  See id.  Budget cites no case law awarding sanctions in analogous circumstances.

Cf. Phoenix Four, Inc. v. Strategic Resources Corp., No. 05 Civ. 4837(HB), 2006 WL

1409413, at *8 (S.D.N.Y. May 23, 2006) (declining to impose sanction of preclusion under

Rule 37 where plaintiff's only harm was having to review documents in a "compressed time

frame" that it brought upon itself by "eschewing the cure of adjourning the trial").

　　　　Budget and Weber also seek unspecified sanctions for Sentry's failure to turn over the

file of Sentry's financial analysis department.  See 4/11/12 Def. Opp. & Mot. at 4-5 (citing

deposition testimony of Miller).  While Sentry maintains that it has produced "documents from

Sentry's Underwriting File *and* its Finance Department File," 4/20/12 Pl. Opp. at 2 (emphasis

in original), it does not affirm that it has produced *all* documents of the Finance Department

that were "completed, utilized, or which formed part of the process of Sentry's consideration

---

[11]  This is in contrast to the mandatory nature of an award of attorney's fees under Rule 37(b)
for disobeying a court order to produce discovery, in the absence of substantial justification.
See discussion *supra* pp. 10-11.

of whether or not to issue the [Policies]." 4/11/12 Def. Opp. & Mot. at 3.  Therefore, Sentry

is directed to produce all responsive documents contained in the Finance Department File by

August 22, 2012.  In the alternative, it must provide an affidavit by Miller, under oath, no

later than August 22, 2012, attesting that all responsive documents of Sentry's Finance

Department File were previously produced.

### B.    Protective Order

In addition to sanctions, the Budget Defendants seek a protective order striking three

requests for production of documents served by Sentry on March 16, 2012 (the "Requests").

See Requests, attached as Exs. F through H to 4/11/12 Def. Opp. & Mot., DE #87, #87-1 and

#87-2.  The Requests — which were served on Weber, Budget and Brand, respectively —

relate to Sentry's alter ego claim against Weber in the Budget Action.  See id.  Budget and

Weber seek a protective order, arguing that the requests are burdensome and overbroad in

scope and time.  See 4/11/12 Def. Opp. & Mot. at 5.  The Budget Defendants presumably

bring this motion under Rule 26(c) of the FRCP, although they cite no case law on this issue.

See In re Parmalat Secs. Litig., 258 F.R.D. 236, 242-43 (S.D.N.Y. 2009) (party seeking

protective order under FRCP Rule 26(c) bears burden of showing good cause for preventing

discovery).

As an initial matter, the Court will strike the document request served upon Brand.  See

Third Set of Requests for The Production of Documents to Defendant Brand Management Inc.,

DE #87-2.  As noted above, discovery in the Brand Action closed on April 1, 2011 and the

Court has declined to reopen discovery.  See supra pp. 6-8.  Therefore, Sentry was not

permitted to serve a document request on Brand pursuant to Rule 34 of the FRCP as late as

March 2012.

Having reviewed the remaining discovery requests, the Court concludes that the majority of the requests are appropriately tailored to Sentry's alter ego claim against Weber, which necessarily requires a very broad-based factual inquiry into the records, finances, and ownership of Budget and the Insured Weber Entities. See, e.g., Wm. Passalacqua Builders, 933 F.2d at 139 (listing factors relevant to corporate veil analysis). However, the Court does find some of the requests to be less relevant to the alter ego analysis than others. Accordingly, Budget need not provide documents in response to requests Nos. 13 and 20,[12] and Weber need not provide documents in response to Requests Nos. 10, 15, and 22.[13]

Budget and Weber also object to the fact that the Requests seek documents as of January 1, 2007 through the present, when the Policies at issue were in effect from September 30, 2008 until September 30, 2009. See 4/11/12 Def. Opp. & Mot. at 5. In opposition, Sentry notes that the Budget Defendants themselves have produced financial information purporting to show certain loans between Budget and affiliated companies as early as January 4, 2007. See 4/20/12 Pl. Opp. at 4. In essence, Sentry argues that it should be allowed to request materials for the same time period as those documents previously produced by Budget, in order to challenge and test that discovery. The Court agrees and declines to limit the time period for these documents.

Budget and Weber's motion for a protective order is denied, except to the limited extent

---

[12] Request Nos. 13 and 20 seek employee pension plan documents and business licenses and permits, respectively.

[13] Request Nos. 10, 15 and 22 seek personal credit card statements, employee pension plan documents and business licenses and permits, respectively.

specified above.  They must produce the demanded documents by August 22, 2012.

## CONCLUSION

For the reasons stated above, the Court denies Sentry's motions to amend the complaint and reopen discovery in the Brand Action.  With respect to the Budget Action, the Court: (1) grants Sentry's March 30, 2012 motion for an order compelling the Budget Defendants to comply with this Court's 2/1/12 Order, and awards reasonable fees and costs to Sentry as a result of the Budget Defendants' noncompliance; (2) denies in part and grants in part Sentry's motion to compel the production of tax records; (3) grants Sentry's motion for leave to re-examine Rosenfeld, as limited above; (4) denies the Budget Defendants' motion for sanctions but compels Sentry to provide all responsive financial department documents not previously produced; and (5) grants in limited part the Budget Defendants' motion for a protective order. All documents directed to be produced must be produced by August 22, 2012.

**SO ORDERED.**

**Dated:**   **Brooklyn, New York**
       **August 10, 2012**

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**