UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SENTRY INSURANCE A MUTUAL
COMPANY,

                             Plaintiff,                   MEMORANDUM
                                               AND ORDER____

           -against-
                                               10-CV-347 (ENV)

BRAND MANAGEMENT INC.,
*also known as*
Budget Services, Inc.,

                             Defendant.
-------------------------------------------------------------x
SENTRY INSURANCE A MUTUAL
COMPANY,

                             Plaintiff,

           -against-                                11-CV-3966 (ENV)

BUDGET SERVICES, INC., et al.,

                             Defendants.
-------------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

        In this consolidated action, plaintiff Sentry Insurance A Mutual Company ("Sentry")

moves for sanctions and a compulsion order against defendants Hershel Weber ("Weber") and

Budget Services, Inc. ("Budget") (collectively, "defendants") for failing to comply with this

Court's August 10, 2012 Memorandum and Order.  See Letter Motion for Discovery and

Sanctions (Oct. 18, 2012) ("10/18/12 Mot."), Electronic Case Filing ("ECF") Docket Entry

("DE") #153.  In addition, Sentry moves to reopen the deposition of Jacob Rosenberg, the

designated Rule 30(b)(6) witness for Budget, and renews its request for production of Weber's

unredacted tax returns.  See 10/18/12 Mot. at 5-7.  For the reasons set forth below, the Court

grants in part and defers ruling in part on Sentry's requests.

## BACKGROUND

These cases arise out of two Workers' Compensation policies (the "Policies") that

Sentry issued to Budget and a related entity called Brand Management, Inc. ("Brand"), which

is the defendant in the first-filed of these two actions.[1]  The Court previously set forth a

detailed procedural history of these actions in its August 10, 2012 Memorandum and Order

("8/10/12 M&O"), see DE #137, which resolved, among other things, a series of disputes that

occurred during the final few months of discovery in the Budget Action.[2]  Below, the Court

recounts the history relevant to the current motion.

**I.      The 8/10/12 M&O**

**A.      Sentry's March 30, 2012 Motion for Sanctions**

On March 30, 2012, Sentry moved for sanctions and a compulsion order against Weber

and Budget (the "3/30/12 Sanctions Motion").  See 8/10/12 M&O at 8-11.  The 3/30/12

Sanctions Motion was based on defendants' alleged failure to produce discovery in compliance

with this Court's February 1, 2012 order (the "2/1/12 Order"), DE #32 in Budget, 11-CV-

3966.  See 8/10/12 M&O at 8-11.  The 2/1/12 Order had directed defendants to produce,

among other things, documents related to non-party entities that were associated with defendant

---

[1]  Unless otherwise indicated, all ECF references in this Memorandum and Order relate to the docket in the first action, Sentry v. Brand Management, 10-CV-347 (ENV) (hereinafter, the "Brand Action").  Although the instant motion relates to the second-filed action, Sentry v. Budget, 11-CV-3966 (ENV) (hereinafter the "Budget Action"), the two cases have been consolidated, and Sentry therefore filed its motion in the Brand Action.

[2]  Discovery in the Budget Action closed on May 27, 2012.  See 8/10/12 M&O at 3. Discovery in the Brand Action ended on April 1, 2011.  See Order (Sept. 27, 2010), DE #16.

Weber and that were insured under the Policies (collectively referred to as the "Insured Weber Entities"), and had ordered the production of a sworn statement from Weber to the extent he claimed not have possession, custody or control of any of the demanded documents.  See 8/10/12 M&O at 8.  The Court had also ordered defendants to produce "the contract between Brand and Budget" and "redacted copies of Weber's and Budget's tax returns."  See id.

In its 8/10/12 M&O, the Court concluded that defendants had violated the 2/1/12 Order.  See 8/10/12 M&O.  First, defendants did not timely produce documents related to the Insured Weber Entities, and the minimal documents they did produce were woefully inadequate.  See id. at 9-10.  Nor did Weber produce his redacted tax returns or an affidavit concerning his discovery compliance, as directed by the Court.  See id. at  9. Having concluded that Weber and Budget willfully violated this Court's 2/1/12 Order, it directed that defendants, by August 22, 2012:  (1) fully comply with the 2/1/12 Order, including the production of Weber's redacted tax returns; (2) "provide an affidavit or affirmation [by Weber] attesting to the fact that he has produced all responsive documents in his possession, control or custody" (hereinafter, the "Weber Affidavit"); and (3) produce "any contract (whether or not presently in force) between Budget and Brand."  See 8/10/12 M&O at 10.  "If no contract ever existed," Weber was required to attest to that fact in his sworn statement.  See id.

As a result of defendants' blatant violation of the 2/1/12 Order, this Court awarded Sentry the attorney's fees and costs it had incurred as a result of defendants' noncompliance.[3]

---

[3]  The 8/10/12 M&O directed the parties to confer over a reasonable amount of legal fees, so
(continued…)

### B.      Sentry's April 10, 2012 Motion to Compel

The 8/10/12 M&O also resolved Sentry's April 10, 2012 motion to compel defendants

to produce the unredacted tax returns of the Insured Weber Entities ("4/10/12 Motion to

Compel").  See 8/10/12 M&O at 12.  In its 4/10/12 Motion to Compel, Sentry requested that,

as a consequence of Weber's failure to comply with the 2/1/10 Order requiring him to produce

redacted tax returns, the Court compel Weber instead to produce *unredacted* tax returns.  See

8/10/12 M&O at 12.

The Court granted in part and denied in part Sentry's 4/10/12 Motion to Compel.

Specifically, the 8/10/12 M&O compelled defendants to produce, by August 22, 2012,

"*redacted* tax returns for the Insured Weber Entities that are in the custody, control or

possession of the [defendants]."  See 8/10/12 M&O at 15 (emphasis in original).  The Court

further directed that, to the extent that defendants did "not have all of the Insured Weber

Entities' tax returns in their possession, custody or control, Weber must provide a statement

under oath to that effect by August 22, 2012, and must state whether those documents exist

and, if so, where they are located."  Id.  The Court declined to compel the production of

Weber's unredacted tax returns.  See id.

### C.      Sentry's July 25, 2012 Motion to Reopen Deposition of Jacob Rosenfeld

In its 8/10/12 M&O, the Court also addressed the July 25, 2012 motion by Sentry to

reopen the deposition of Jacob Rosenfeld, the outside accountant for defendants and the

---

[3](...continued)
as to avoid further motion practice.  See 8/10/12 M&O at 11.  The parties were apparently
unable to reach agreement, and, accordingly, Sentry moved for fees on August 27, 2012.  See
Letter Motion for Attorney Fees (Aug. 27, 2012), DE #145.  That motion remains *sub judice*.

Insured Weber Entities.  See 8/10/12 M&O at 15-16.  Rosenfeld, who was represented by defendants' counsel, had appeared for a deposition pursuant to a subpoena but failed to produce subpoenaed documents (the "Rosenfeld Documents"), resulting in a compulsion order by this Court.  See id.  After Sentry received and reviewed the Rosenfeld Documents, it sought to reopen Rosenfeld's deposition on the basis that the Rosenfeld Documents raised new issues concerning defendants' finances.  The Court granted Sentry's motion, although it limited the deposition to three hours and to questions concerning the Rosenfeld Documents.  See 8/10/12 M&O at 17.

## II.     Defendants' Response to the 8/10/12 M&O and Sentry's Current Motion

Not surprisingly, given the history of this matter, defendants could not manage to comply with the Court's 8/10/12 M&O without judicial intervention.  See, e.g., Sentry's Letter Regarding Defendants' August 22 Letter (Aug. 23, 2012), DE #143; Defendants' Letter Responding to Sentry's August 23 Letter (Aug. 23, 2012), DE #144.  Essentially, defendants took it upon themselves, without seeking leave of the Court, to make available a *partial* production of the documents required under the 8/10/12 M&O on the date they were due, August 22, 2012, but declined to release them that day for copying.  See Memorandum and Order (Sept. 10, 2012) ("9/10/12 M&O") at 3, DE #152.  As detailed in this Court's September 10, 2012 Memorandum and Order, defendants did not act in good faith and delayed releasing that partial production for another two weeks, see id. at 2-3, and eventually had to be compelled by this Court -- *again* -- to produce *all* documents responsive to the Court's 8/10/12 M&O by the close of business on September 10, 2012, nearly three weeks after the court-imposed deadline.  See 9/10/12 M&O at 3-4.  The Weber Affidavit required by the 8/10/12

M&O, although dated August 22, 2012, was not furnished to Sentry until September 5, 2012. See 10/18/12 Mot. at 2 n.2.

Having reviewed the documents produced by defendants, Sentry moves this Court for sanctions and an order compelling compliance with the 8/10/12 M&O.  See generally 10/18/12 Mot.  The primary target of Sentry's pending motion is the Weber Affidavit, which, in addition to its belated production,[4] does not, according to Sentry, contain all of the information required by the 8/10/12 M&O.  See 10/18/12 Mot. at 1-3.  Sentry also points to inconsistencies between the Weber Affidavit and other discovery responses provided by defendants, concerning Weber's interest in certain of the Insured Weber Entities.  See id. at 3. Finally, Sentry contends that Weber failed to produce the tax returns and other financial documents for the Insured Weber Entities, in contravention of the 8/10/12 M&O.  See 10/18/12 Mot. at 4-5.

In addition to sanctions and a compulsion order, Sentry also requests leave to re-open the deposition of Jacob Rosenberg ("Rosenberg"), the designated Rule 30(b)(6) witness for Budget.  See 10/18/12 Mot. at 5-7.  As noted above, the 8/10/12 M&O allowed for the re-opened deposition of Rosenfeld, the outside accountant, based on new information contained in the Rosenfeld Documents.  See discussion *supra* pp. 4-5.  On September 13, 2012, pursuant to the 8/10/12 M&O, Sentry deposed Rosenfeld a second time and learned that some of the information contained in the Rosenfeld Documents had been provided to Rosenfeld by

---

[4]  Although defendants' counsel prohibited Sentry's commercial copier from removing the partial production of 46 boxes from Budget's offices on August 22, 2012 for copying purposes, see 9/10/12 M&O at 2-4, no reason appears why the fourteen-page Weber Affidavit could not have been released to Sentry in a timely fashion.

Rosenberg (the in-house accountant for Budget and various Weber-controlled entities), and therefore Rosenfeld could not meaningfully testify about some of the contents of the documents.  See 10/18/12 Mot. at 5-6.  Because Rosenberg had been deposed prior to the production of the Rosenfeld Documents, and Rosenfeld could not testify fully about the contents thereof, Sentry now asks to reopen the deposition of Rosenberg for the limited purpose of questioning Rosenberg on the Rosenfeld Documents, as well as on the belated 8/10/12 M&O production.

Defendants do not oppose reopening Rosenberg's deposition, provided that the questioning is no more than one hour and limited to the topic of the one offshore account identified in Sentry's motion to reopen; defendants object to any broader inquiry.  See Memorandum in Opposition re Motion for Discovery (Nov. 12, 2012) ("Def. Opp.") at 2-3, DE #158.  Defendants oppose Sentry's motion in all other respects.  See generally id.  Neither side cites any case law in support of its positions.

## DISCUSSION

### I.      Sentry's Motion for Sanctions and a Compulsion Order

#### A.      Defendants Violated the 8/10/12 Order

##### 1. Weber Affidavit

It is clear that defendants violated the Court's 8/10/12 Order in a number of respects. First, the Weber Affidavit was produced on September 5, 2012 -- two weeks after the Court had directed its production.  Second, the Weber Affidavit does not comply with the Court's requirement that it address particular topics.  See generally Weber Affidavit, DE# 153-2.  For instance, although no contract (whether currently in existence or not) between Budget and

Brand has been produced, <u>see</u> 10/18/12 Mot. at 2, the Weber Affidavit contravenes the Court's mandate that it include a statement attesting to the fact that none currently exists or ever existed.  <u>See</u> 8/10/12 M&O at 10.  Defendants' opposition on this point is unavailing. Defendants argue that paragraph 17 of the Weber Affidavit establishes "that no such documents exist," <u>see</u> Def. Opp at 3, but they ignore the fact that Weber was also directed to disclose whether any such contracts previously existed and, if none ever existed, to attest to that fact in his affidavit.  Weber's sworn statement contains none of this information.

Moreover, the 8/10/12 M&O directed defendants to produce the redacted tax returns of the Insured Weber Entities, and, if any of the demanded returns were not in his possession, custody or control, he was to confirm in the Weber Affidavit both the existence of the returns and identify where the missing tax returns could be located.  <u>See</u> 8/10/12 M&O at 15; 10/18/12 Mot. at 3 n.5.  In their opposition papers, defendants do not claim that they produced all responsive redacted tax returns of the Insured Weber Entities.  <u>See</u> Def. Opp. at 6-7. Rather, they merely list the returns previously produced by non-party Rosenfeld -- and the list itself reveals unexplained gaps in the production.  <u>See</u> <u>id.</u>  Nowhere do they address the fact that Rosenfeld failed to produce all tax returns within the scope of the demand and the Court's order, nor do they explain why the Weber Affidavit failed to state whether these non-produced tax returns existed and, if so, where they could be located.  <u>See generally</u> <u>id.</u>[5]

Finally, the 8/10/12 M&O required Weber to attest to the fact "that he has produced all

---

[5] Defense counsel's unsworn statement concerning what files Budget or Weber maintained or did not maintain are not a substitute for the sworn statements that Weber was required to make.  <u>See</u> Def. Opp. at 4 n.6.

responsive documents in his possession, control or custody."  8/10/12 M&O at 10.  Sentry

argues that the Weber Affidavit does not comply with that instruction, as there is no statement

to that effect included in the affidavit.  See 10/18/12 Mot. at 2-3.  Defendants counter that

Weber expressly addressed the production of each specific document demand.  See Def. Opp.

at 4 ("In each case, where no documents existed, in response to a specific document demand,

Weber so attested in the Weber Affidavit.").[6]

To be sure, the fact that the Weber Affidavit does not specifically track the language

specified in the Court's 8/10/12 M&O does not, by itself, give rise to a violation.  On the

other hand, the fact that Weber provided a request-by-request response is not dispositive of the

question as to whether defendants complied with the Court's order.  Some of Weber's

responses are incomplete on their face.  For example, in response to a request for all

documents "relating to" the Policies, Weber merely avers that copies of the Policies

themselves have been previously produced.  *Compare* Weber Affidavit ¶ 5 *with* First Set of

Requests for Production of Documents at 9, DE #23-1 in Budget, 11-CV-3966.  In addition, at

least one response contradicts previous interrogatory responses made under oath.  *Compare*

Weber Affidavit ¶ 1 (attesting that he never owned any interest in Grandison Management,

Inc.) *with* Schedule of Weber Entities, DE #107-4 (Weber owned 40 percent of Grandison

Management, Inc.).  Other responses are worded in ways that suggest that Weber does not

now possess certain documents, but leave open the question whether such documents are

_____

[6]  Although defendants' counsel attempts to obscure his clients' noncompliance by listing, *ad
nauseam*, what documents were produced, see Def. Opp. at 5-9, he avoids confronting the
question posed by this motion:  whether defendants produced *all* responsive documents in their
possession, custody or control.

nevertheless in his custody or control.  See, e.g., Weber Affidavit ¶ 50 ("I have no documents responsive to Document Request number 7.").  Furthermore, the language used in the Weber Affidavit varies from request to request, and, given the history of obstructionism in this case, may indicate that the sworn statement was artfully drafted to create the appearance but not the reality of full compliance.[7]

Since Weber's compliance with the Court's 8/10/12 compulsion order is critical to the scope of the sanction that this Court will impose, the Court directs Weber to file a supplemental affidavit no later than December 27, 2012.  This supplemental affidavit must specifically confirm whether, following a diligent search, he has produced all responsive documents in his possession, control or custody.  In order to avoid further obfuscation, the supplemental sworn statement must utilize the exact phrase "produced all responsive documents in my possession, control or custody"[8] and must address whether any responsive documents have been destroyed or misplaced.  Moreover, the supplemental affidavit must identify and correct any and all errors contained in the Weber Affidavit.  See Def. Opp. at 10 (admitting that the Weber Affidavit "contained an obvious error" with respect to Weber's

---

[7]  For example, one portion of Weber's statement claims that, despite a "diligent search," documents responsive to a particular demand could not be located, see Weber Aff. ¶ 7, whereas other responses simply claim that "I have no documents" responsive to that demand. Id. ¶ 4; see id. ¶ 34 ("With respect to Document Request number 5, I have been unable to locate any documents responsive to this request."); id. ¶¶ 50-51 ("I have no documents responsive to . . .").

[8]  Weber's counsel was obviously capable of drafting such language, as he utilizes that exact phrase in opposing Sentry's motion.  See Def. Opp. at 10 ("Clearly, Weber and Budget have provided to Sentry all of the documents in their possession, custody and control responsive to the document demands and the prior Orders of this Court.") (without citing to Weber Affidavit).

ownership interest in the Insured Weber Entities).

### 2. USB Disk

When Sentry's copy service finally secured defendants' belated production of documents on September 5, 2012, Sentry did not obtain a "USB disk with all Sentry claims files," which purportedly was contained in one of the boxes; by email dated September 19, 2012, Sentry's counsel requested a copy of that USB disk.  See 10/18/12 Mot. at 4 n.8 & Ex. A thereto.  That information still has not been supplied.  See id. at 4 n.8; Reply to Response to Motion (Nov. 15, 2012) ("Pl. Reply") at 2 n.1, DE #159.  Defendants are directed to turn over, by December 21, 2012, the USB key.

### 3. Compact Discs from Bank of America

Finally, defendants produced several compact discs from Bank of America, which apparently require a license key in order to access the information contained therein; defendants claim they do not have the key.  See Def. Opp. at 4 n.7.  According to defendants, the discs contain payroll information provided by an outside vendor, whom defendants no longer utilize.  See id.  Although defendants contend that "no one in the company" (without specifying which "company"), "actually knows the license key," defendants fail to indicate whether they affirmatively sought the information from the outside vendor.  See id.  Therefore, defendants are directed to contact forthwith the outside vendor responsible for the unreadable compact discs and obtain the requisite information (whether by acquiring the license key for discs previously provided to Sentry, or by having that outside vendor supply new, readable copies of the payroll documents contained therein).  Sentry must be provided with meaningful access to those payroll documents, at defendants' expense (if any), no later than January 4,

-11-

2013.

**B.    The Appropriate Sanctions for Defendants' Violations**

Sentry also is seeking additional sanctions for defendants' continuing violations.  See

10/18/12 Mot. at 4.  As an initial matter, Sentry is entitled to its fees and costs in bringing its

10/18/12 Motion.  Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure ("FRCP")

provides that, if a party fails to obey a court order to provide or permit discovery, "the court

*must* order the disobedient party, the attorney advising that party, or both to pay the reasonable

expenses, including attorney's fees, caused by the failure, unless the failure was substantially

justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P.

37(b)(2)(C) (emphasis added).  Absent sufficient justification, an award of fees under Rule

37(b) is mandatory.  See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d

1172, 1177 (2d Cir. 1988); Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's

Democratic Republic, No. 10 Civ. 5256(KMW), 2011 WL 4111504, at *9-10 & n.8

(S.D.N.Y. Sept. 13, 2011); Robbins & Myers, Inc. v. J.M. Huber Corp., No. 01-CV-

201S(F), 2010 WL 3992215, at *5 (W.D.N.Y. Oct. 12, 2010) (noting that a fee award under

Rule 37(b) "is not a matter of judicial discretion, but is required, absent substantial

justification").  Defendants have not substantially justified their noncompliance, and thus

attorney's fees are mandatory in this case.[9]

Furthermore, the Court rules that defendants' counsel, Avrom Vann, is jointly and

---

[9]  The result is the same under Rule 16(f) of the FRCP, which authorizes sanctions, and
requires an award of fees absent substantial justification, for "fail[ing] to obey a scheduling or
other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C); see Fed. R. Civ. P. 16(f)(2); Farricker v.
Penson Dev., Inc., No. 07 Civ. 11191 (PKC), 2010 WL 4456850, at n.2 (S.D.N.Y. Oct. 28,
2010).

severally liable with his clients for those fees, pursuant to Rule 37(b)(2)(C), which authorizes the Court to sanction "the disobedient party, the attorney advising that party, *or both,*" in the amount of the reasonable fees incurred by the party injured by their disobedience.  See Fed. R. Civ. P. 37(b)(2)(C) (emphasis added); see also Farricker v. Pension Dev., Inc., No. 07 Civ. 11191 (PKC), 2010 WL 4456850 (S.D.N.Y. Oct. 28, 2010) (imposing fees jointly and severally against party and counsel for, among other things, failing to file an affidavit attesting to compliance with discovery obligations and later filing one that did not include specific statement required by the court).  Here, defendants' counsel was well aware of the explicit requirements of this Court's 8/10/12 M&O and failed to substantially justify why he filed a noncompliant affidavit on behalf of his client.[10]

Sentry is directed to confer with defendants in an effort to reach agreement as to a reasonable amount of attorney's fees and costs incurred by Sentry as a result of defendants' failure to comply with the 8/10/12 Order.  If the parties cannot agree on a specific amount, then Sentry may submit an application for fees, with relevant time-records and documented expenses, no later than December 28, 2012.  Defendants' opposition thereto must be filed by January 4, 2013.

Given defendants' history of ignoring this Court's discovery orders, thereby causing

---

[10]  In an (unsuccessful) attempt to divert this Court from his and his clients' willful disobedience of the 8/10/12 M&O, defense counsel complains that Sentry unnecessarily waited six weeks from defendants' production, until October 18, 2012, to bring the instant motion. See Def. Opp. at 1.  Documentation provided by Sentry makes clear that any delay was a direct result of defense counsel's failure to timely and substantively respond to Sentry's attempt to meet-and-confer over the insufficiencies of defendants' production.  See Pl. Reply at 1.  The fact that defense counsel leads off with this argument in opposing Sentry's motion, see Def. Opp. at 1, only underscores the weakness of defendants' position.

unnecessary delays and costs, Sentry requests "more stringent sanctions" than attorney's fees and costs, but fails to specify which sanctions it seeks.  See 10/18/12 Mot. at 4.  Rule 37(b)(2) of the FRCP grants courts broad discretion in fashioning appropriate sanctions for violating judicial discovery orders.  See, e.g., Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 135 (2d Cir. 2007); Pall Corp. v. 3M Purification, Inc., 279 F.R.D 209, 212 (E.D.N.Y. 2011) (collecting cases).  The Court has previously warned defendants that further noncompliance would result in harsh sanctions.  See 8/10/12 M&O at 10.  Since most of the delayed and/or outstanding discovery relates to the Insured Weber Entities, and, thus, Sentry's alter ego claim, this Court would be justified in entering an order precluding defendants from offering evidence opposing Sentry's alter ego claim.  See Amway Corp. v. Shapiro Exp. Co., 102 F.R.D. 564, 570 (S.D.N.Y. 1984) ("As the parties' efforts to unravel the tangled web of companies which seem to 'own' Mr. Shapiro's assets have been frustrated by his refusal to cooperate with discovery, an order pursuant to Fed R. Civ. P. 37(b)(2)(B) precluding him from opposing such a piercing of the corporate veil is appropriate."); accord Indep. Nat'l Distrib. Inc. v. Black Rain Comm'ns, Inc., No. 94 Civ. 8464 (JFK), 1996 WL 238401, at *5 (S.D.N.Y. Apr. 4, 1996).[11]  The Court will defer imposing such a preclusion sanction until the submission of Weber's supplemental affidavit.  If the supplemental affidavit is unsatisfactory or untimely, the Court will revisit the issue of a preclusion order sanction.  See

---

[11]   See generally Farricker, 2010 WL 4456850, at *2 (listing the following factors in determining whether to dismiss or impose harsh sanctions under Rule 37:  the willfulness of the disobedient party, the efficacy of less sanctions, the duration of the period of noncompliance, and whether the disobedient party had been warned of the consequences of noncompliance) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302-03 (2d Cir. 2009)).

<u>Shcherbakovskiy</u>, 490 F.3d at 140 ("Rule 37 permits the imposition of 'just' sanctions; the severity of the sanction must be commensurate with the non-compliance."). Discovery ended more than six months ago; the Court will tolerate no further delays.

## II.    Motion to Reopen the Deposition of Jacob Rosenberg

Sentry seeks leave to reopen the deposition of Jacob Rosenberg, Budget's designated Rule 30(b)(6) witness. <u>See</u> 10/18/12 Mot. at 5. Sentry argues that such relief is appropriate because at the time of Rosenberg's deposition, on June 20, 2012, Sentry had not yet received any documents from defendants related to its alter ego claim, nor had it received the Rosenfeld Documents. <u>See id.</u> While defendants do not oppose reopening the Rosenberg deposition, they contend that the examination should not exceed one hour and should be limited in scope to questions concerning the previously identified offshore account. <u>See</u> Def. Opp. at 2.

Defendants' position can be swiftly rejected. By the time of the Rosenberg deposition, defendants had failed to produce documents in response to the Court's 2/1/12 Order and Rosenfeld had failed to produce the subpoenaed Rosenfeld Documents. <u>See</u> <u>Ganci v. U.S. Limousine Serv., Ltd.</u>, No. CV 10-3027 (JFB)(AKT), 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011) ("Courts will typically reopen a deposition where there is new information on which a witness should be questioned."). Defendants' attempts to penalize Sentry for defendants' own discovery delays are unavailing. Therefore, the Court will reopen the deposition of Rosenberg, with the following limitations: (1) the deposition topics will be limited to the Rosenfeld Documents and the documents produced pursuant to the 8/10/12 M&O and this Order; and (2) the deposition will not exceed six hours. The Rosenberg deposition must be completed by January 18, 2013.

**III.    Sentry's "Renewed" Motion to Compel Production of Weber's Unredacted Tax Returns**

The Court's 2/1/12 Order directed defendants to produce redacted tax returns of Budget and Weber.  See 8/10/12 M&O at 12.  Defendants failed to comply, and Sentry thereafter renewed its motion to compel the production of *unredacted* copies of the Weber and Budget returns.  See id.  In its 8/10/12 M&O, this Court adhered to its prior ruling, denied Sentry's motion for unredacted tax returns, and compelled Weber to produce redacted copies.  See id. at 15.  Weber reportedly has done so, and Sentry now again "renew[s]" its request for the unredacted Weber returns.  See 10/18/12 Pl. Mot. at 6.  Sentry's chief concern is that "[t]he redacted returns impede Sentry's ability to reconcile the charitable contributions claimed on Weber's personal tax returns" with the returns of the Insured Weber Entities.  See id. Defendants challenge the relevance of Weber's personal charitable contributions to its alter ego claim.  See Def. Opp. at 9.  In reply, Sentry argues in broad strokes about the need to "test the legitimacy of these contributions," but does not articulate a specific basis for believing that the charitable contributions would reveal improper transferring of funds to Insured Weber Entities. See Pl. Reply at 5.  Nor does Sentry offer any explanation as to why it is identifying the portions of the returns it deems relevant to its alter ego claim for the first time on its *second* "renewed" motion for unredacted returns.

In addition, Sentry argues for the first time that Sentry should be allowed to explore Weber's real estate holdings and information concerning his interest and dividend income.  See 10/18/12 Mot. at 7.  However, Sentry has not established that the referenced redacted portions are relevant to its alter ego claim; rather, Sentry appears to be on a premature quest for

-16-

discovery useful in collecting a judgment.  Furthermore, the Court has conducted an *in camera* review of Weber's unredacted 2008 tax return, and nothing on the pages cited by Sentry references or appears to relate to any of the Insured Weber Entities.  Given Sentry's weak showing of relevance, and the presumption in favor of maintaining the confidentiality of tax returns, see Johnson & Johnson Consumer Cos. v. Aini, No. 02-CV-6624 (DLI) (RLM), 2008 WL 4470160, at *1 (E.D.N.Y. Oct. 2, 2008), the Court denies Sentry's (second) renewed motion to compel production of Weber's unredacted federal tax returns.

### CONCLUSION

For the foregoing reasons, the Court grants in part and defers ruling in part on Sentry's motion for sanctions and a compulsion order.  As defendants have violated this Court's 8/10/12 M&O -- and, indeed, appear to have done so willfully -- defendants and defendants' counsel are jointly and severally liable for the fees incurred by Sentry in bringing its motion. The parties are directed to confer as to a reasonable amount of attorney's fees and, if no agreement is reached, Sentry may file a motion for fees by December 28, 2012, with defendants' opposition due on January 4, 2013.

In addition, no later than December 27, 2012, defendant must file a supplemental affidavit from Weber that fully complies with this Order.  Defendants must also, by December 21, 2012, provide the USB key to Sentry and any other documents previously withheld but required to be produced by the 8/10/12 and 2/1/12 Orders.  Payroll records and other documents contained on the unreadable compact discs must be produced to Sentry by January 4, 2013.

The Court defers ruling at this time as to whether to issue an order precluding

defendants from opposing Sentry's alter ego claim, pending the submission of the supplemental Weber affidavit.

The Court also grants Sentry's motion to reopen the deposition of Jacob Rosenberg. The deposition, which must be complete by January 18, 2013, is limited to six hours and to the topics arising out of the Rosenfeld Documents and the defendants' production following the 8/10/12 M&O and this Order.

Finally, the Court denies Sentry's renewed motion to compel the production of Weber's unredacted tax returns.

The parties are directed to file a joint status report by January 22, 2013, informing the Court whether either party plans to make a dispositive motion before the Honorable Eric N. Vitaliano, or whether this Court should set a schedule for the preparation and filing of a joint pretrial order in accordance with Judge Vitaliano's Individual Rules.

Any objections to this Memorandum and Order must be filed with Judge Vitaliano on or before **January 7, 2013**.[12]  Failure to file objections in a timely manner may waive a right to appeal the District Court order.

> SO ORDERED.

Dated:    **Brooklyn, New York**
             **December 19, 2012**

                               /s/ *Roanne L. Mann*
                               **ROANNE L. MANN**
                               **UNITED STATES MAGISTRATE JUDGE**

---

[12]  The filing of an objection does not stay the schedule set by this Memorandum and Order.