UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

SENTRY INSURANCE A MUTUAL                   :
COMPANY,                                     :
                                             :
                            Plaintiff,       :        **MEMORANDUM & ORDER**
                                             :
            -against-                        :        10-cv-347 (ENV) (RLM)
                                             :
BRAND MANAGEMENT, INC., BUDGET              :        11-cv-3966 (ENV) (RLM)
SERVICES, INC., and HERSHEL WEBER,           :
                                             :
                            Defendants.      :

-------------------------------------------------------------x

VITALIANO, D.J.,

      For more than a year, plaintiff Sentry Insurance A Mutual Company

("Sentry") has sought discovery of defendants Brand Management, Inc. ("Brand"),

also known as Budget Services, Inc. ("Budget"), and of its principal, Hershel Weber.

Contention, frustration, obfuscation, and failure of accommodation have been the

hallmarks of defendants' response.

      The overall litigation history is equally tortured, if not more so. In two now-

consolidated actions, Sentry asserts, *inter alia*, a breach of contract claim against

defendants, regarding a pair of workers' compensation policies issued by Sentry in

2008. (Compl. at ¶ 5, Dkt. No. 1).[1] In the first-filed action, against Brand, the parties

not only completed discovery, but went to trial, which began on July 20, 2011. (Dkt.

---

[1] Unless otherwise specified, citations to docket entries refer to the primary docket
number in this case, 10-cv-347. A second case, with a second complaint, bearing
docket number 11-cv-3966, was filed and consolidated into this one; a related
bankruptcy proceeding, also in this district, bore docket number 11-bk-46230.

No. 49). On the first day of trial, however, interrupting the testimony of Sentry's second witness, Brand announced that it had that day sought bankruptcy protection, resulting in an automatic stay of the case and a mistrial. (Dkt. No. 51). An omen of things to come, the Bankruptcy Court subsequently dismissed Brand's bankruptcy case as a filing "bordering on bad faith." (11-bk-46230, Dkt. No. 49). At or around the same time, Sentry commenced the second action against Budget and Weber, as the alter egos of Budget, Brand, and other entities. (Compl. at ¶¶ 44–55, 11-cv-3966, Dkt. No. 1). This Court consolidated the cases, and discovery recommenced. The pretrial management disputes have come at a staccato pace. They have led to no fewer than four motions for sanctions and a plethora of memoranda and orders by Magistrate Judge Roanne L. Mann, either threatening or imposing sanctions. At the fulcrum of them all lies Sentry's alter ego claim against Weber.

On February 7, 2013, Judge Mann issued a Report and Recommendation ("R&R") that the Court preclude defendants from opposing Sentry's alter ego claim, either at summary judgment or trial, or in the alternative that the Court strike their answers and enter default judgment against them. On March 11, 2013, defendants filed timely objections to the R&R. No other objections have been filed.

## Standard of Review

In reviewing an R&R of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where no objection has been taken, the district court need only satisfy itself that the R&R on its face and on the record is

2

free from any clear error. *Urena v. New York*, 160 F. Supp. 2d 606, 609–10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). A district court is required, however, as in the instant matter, to "make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made" by any party. Fed. R. Civ. P. 72(b).

<u>Procedural History</u>

On February 1, 2012, defendants were ordered to supply a host of documents relevant to Sentry's alter ego claim against Weber ("First Order"). (Mem. & Order, Mann, M.J., 11-cv-3966, Dkt. No. 37). Among the documents defendants were ordered to seek and produce were those related to non-party entities that were covered by workers' compensation insurance through their association with Weber (the "Insured Weber Entities"), documents related to any contracts between Brand and Budget, and an affidavit from Weber essentially attesting to defendants' compliance with the document demand (*Id.*). Sentry moved for sanctions and an order compelling Weber's compliance on March 30, 2012, after defendants had failed to comply with Judge Mann's First Order. (Pl. Mot., Dkt. No. 71). Sentry proffered that it had provided defendants with sufficient opportunity to cure deficient production, and that their counsel had "advised that there were no additional documents to produce"; counsel further assured Sentry that Weber would affirm in a forthcoming affidavit that no additional documents existed. (*Id.* at 2).

Nearly five months later, Judge Mann, in a Memorandum and Order dated

August 10, 2012 ("Second Order"), found that defendants had provided only
"minimal production," which was "woefully inadequate", and that Weber had still
provided no affidavit concerning his compliance with the First Order. (Mem. &
Order, Mann, M.J. 9–10, Dkt. No. 137; R&R 3, Dkt. No. 179). Finding that
defendants had "willfully violated" the First Order, Judge Mann ordered that
defendants fully comply with the First Order and submit the still-outstanding
affidavit from Weber, "[o]n pain of sanctions". (Mem. & Order, Mann, M.J. 10,
Dkt. No. 137).[2] Defendants were directed to comply with the Second Order by
August 22, 2012, a date which would come and go without production compliance
but not without controversy. According to a stream of letters filed by counsel,
defendants made available "a partial production" on the August compliance date
but refused to permit their copying or retrieval by Sentry's agents because Sentry
arrived later than expected, and because of an apparent misunderstanding about
confidentiality stipulations. *See, e.g.*, (R&R 4, Dkt. No. 179; Letters, Dkt. Nos. 142–
44). Actually, on this dust-up, defendants provide two versions of reality. In the
first, they say that their restricted production of August 22, 2012 was both full and
ready for processing at the time set. In the second, their counsel, two weeks later,
requested an extension of time to complete the production—already months

---

[2] In the Second Order, Judge Mann also awarded attorney's fees and costs to plaintiff in
connection with its pursuit of a remedy for defendants' noncompliance with the First
Order. (Mem. & Order, Mann, M.J. 11, Dkt. No. 137). The parties were requested to
confer regarding a reasonable award of fees, but to no avail; Judge Mann subsequently
granted Sentry's motion for fees in the amount of $6570. (Mem. & Order, Mann, M.J., Dkt.
No. 179). Judge Mann's sanctions order for that episode is the subject of a separate
objection by defendants, which is overruled in a separate Memorandum & Order of the
Court dated today.

4

overdue. (Letter, Dkt. No. 151). Apparently, the second version of reality was more accurate, since on September 5, 2012, defendants finally produced an affidavit by Weber addressing discovery compliance. Compellingly, it was backdated to August 22, 2012, and contained a series of errors, contradictions, and artfully-worded obfuscations. In any event, it failed to comply with Judge Mann's Second Order. *See* (Pl. Mot, Dkt. No. 153; Def. Resp. 10, Dkt. No. 158 (admitting "clear error" on the face of the affidavit)). Judge Mann, in a display of remarkable patience and restraint, especially in light of the outright initial misrepresentation by defense counsel that defendants' had complied with the Second Order, then issued another order denying the defense motion for an extension of time, chastising defendants for a failure to act in good faith, and insisting that production be completed immediately—with all directives, again, "on pain of sanctions" ("Third Order"). (Mem. & Order, Mann, M.J. 3–4, Dkt. No. 152).

By October 18, 2012, the situation had not improved, and Sentry filed a new motion to compel discovery and for sanctions. (Pl. Mot., Dkt. No. 153). Sentry continued to seek documents requested in connection with its alter ego theory, and charged that Weber, by his unmodified September 5, 2012 affidavit, had "persist[ed] in his failure to make the required attestation[s]" and had "attempt[ed] to improperly limit the universe of documents that the Court [had] ordered the Budget Defendants to produce." (*Id.* at 3). In response to Sentry's motion, defendants continued to stand by the claimed adequacy of the Weber affidavit, noting it was "a very detailed affidavit of fourteen (14) pages." (Def. Resp. 4, Dkt. No. 158). Flat out, defendants represented that "[c]learly, Weber and Budget have

5

provided to Sentry all of the documents in their possession, custody and control responsive to the document demands and the prior Orders of this Court." (*Id.* at 10).

In what had become commonplace, further consideration made manifest the persistent disconnect between defendants' representations and reality. As a result, on December 19, 2012, Judge Mann issued still another Order ("Fourth Order"), noting the existence of yet-unproduced documents, detailing once more the ways in which the Weber affidavit had failed to comply with her previous orders, and ordering that a supplemental Weber affidavit be filed no later than December 27, 2012 to cure the noted deficiencies. (Mem. & Order, Mann, M.J. 10, Dkt. No. 160). Succinctly, Judge Mann wanted Weber's averments to inform her deferred determination of whether—and to what extent—further sanctions would be merited. As Judge Mann observed,

> Since most of the delayed and/or outstanding discovery relates to the Insured Weber Entities, and, thus, Sentry's alter ego claim, this Court would be justified in entering an order precluding defendants from offering evidence opposing Sentry's alter ego claim. The Court will defer imposing such a preclusion sanction until the submission of Weber's supplemental affidavit. If the supplemental affidavit is unsatisfactory or untimely, the Court will revisit the issue of a preclusion order sanction. Discovery ended more than six months ago; the Court will tolerate no further delays.

(*Id.* at 14–15 (internal citations omitted)).

Months after representing to all who would listen that production was complete, on December 26, 2012, defendants provided Sentry with a partial production of as-yet-undisclosed documents relating to one of many Insured Weber Entities. *See* (Pl. Mot. 2, Dkt. No. 166). More productions were to come, continuing

through at least January 8, 2013, at which point more than 100,000 additional pages had been provided to Sentry. More incredibly, despite the vastness of the miracle production, certain payroll documents called for by the Fourth Order remained unproduced. (*Id.* at 2). Whatever the value of the produced documents, the late summer discovery representations in affidavits and statements of defendants and their counsel had proved worthless.

On January 2, 2013, defendants produced a supplemental Weber affidavit, backdated to December 27, 2012, which defendants did not file with the Court. (*Id.*). The supplemental Weber affidavit, depressingly, was replete with inconsistencies, repeated misrepresentations, and dissembling. For instance, it did not attest to whether any current or past contract exists or existed between Budget and Brand, altogether ignoring the requirements and reminders of the Second, Third, and Fourth Orders. *See* (Mem. & Order, Mann, M.J., Dkt. No. 137; Mem. & Order, Mann, M.J., Dkt. No. 152; Pl. Mot., Dkt. No. 166-1). The original and supplemental Weber affidavits were also apparently contradicted by a subsequent document production. That production established that at least one Insured Weber Entity maintained bank accounts, in spite of Weber's affirmations that bank accounts were never maintained by Insured Weber Entities. *See* (Pl. Mot. 3, Dkt. No. 166). Seizing on these and other acts or omissions frustrating discovery and defying compliance orders, Sentry pressed anew for sanctions. (*Id.* at 3–7). Defendants failed to timely oppose Sentry's motion but did—following Sentry's accusations—produce more than 200 boxes of additional documents apparently relating to bank statements which Weber had sworn did not exist. *See* (R&R 12–13, Dkt No. 179).

The last fleck of straw had landed on the camel's back. On February 7, 2013, Judge Mann filed the subject R&R, concluding that an order of preclusion be entered against defendants as a sanction for their willful and bad faith noncompliance with discovery demands and pretrial management orders.

### Discussion

Judge Mann's R&R addresses two separate issues: first, the appropriate sanction to be imposed for defendants' failure to comply with the Second Order, which had been deferred by the Fourth Order; and, second, whether, separately, additional sanctions were merited for defendants' failure to comply with the Third and/or Fourth Orders. The first is discussed here.[3]

A. The Breadth of Available Sanctions

Under Rule 37(b)(2) of the Federal Rules of Civil Procedure, courts enjoy broad discretion to sanction parties that fail to obey discovery orders; this discretion includes, but is not limited to, the power to issue an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses." Fed.

---

[3] As to the second question, a different standard applies and, on these facts, short-form adjudication is all that is required. The issue arises out of Judge Mann's directive that defendants pay sanctions of attorney's fees and costs to Sentry for violating the Third and Fourth Orders. That determination being entirely within Judge Mann's discretion to make, and finding no abuse of discretion or clear error, this Court adopts Judge Mann's R&R as the opinion of the Court insofar as it levies sanctions for violations of the Third and Fourth Orders. *See* 28 U.S.C. § 636(b)(1); *Commodity Futures Trading Comm'n v. Standard Forex, Inc.*, 882 F. Supp. 40, 42 (E.D.N.Y. 1995) ("magistrates are afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused."). The parties have since reached an agreement—astonishingly—with respect to the fee award. In line with these findings, of course, defendants' objection to this recommendation is overruled.

8

R. Civ. P. 37(b)(2)(A)(ii); *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991). A court's discretion should be guided by the principle that "the severity of the sanction must be commensurate with the non-compliance," *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007), such that sanctions are both "just . . . and relate to the particular claim to which the discovery order was addressed." *Daval Steel*, 951 F.2d at 1366 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707 (1982)). An order of preclusion "is strong medicine, [but] such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators." *Id.* at 1367 (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)). Finally, when selecting an appropriate sanction from among the many options provided by Rule 37, courts have considered: (1) the willfulness of acts underlying noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of noncompliance; and (4) whether the noncompliant party was on notice that it faced possible sanctions. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302–03 (2d Cir. 2009). In textbook fashion, Judge Mann has considered all of these factors in reaching her conclusion.

## B. Defendants' Objections Overruled

Defendants dispute their noncompliance.[4] Mysteriously, for example, as part of their hopeless defense to the sanction recommended by Judge Mann, they lament that they were "destined to be faulted" with respect to the Weber affidavits. (Def. Mem. 20, Dkt. No. 184). Particularly, defendants argue that "Weber was directed to use very specific language in the Supplemental Affidavit", but was still "faulted for not having provided the information in a different manner. Weber did exactly as he was instructed to do and should not be sanctioned for having followed the directive of the Magistrate." (*Id.* at 21). Defendants, however, mischaracterize both Judge Mann's requirements for the supplemental Weber affidavit and what was actually stated in that affidavit under oath.

Indeed, it was this sort of dissembling that led to the order directing Weber to file a supplemental affidavit in the first place. Specifically, the Second Order directed that:

> Weber must provide an affidavit or affirmation attesting to the fact that he has produced all responsive documents in his possession, control or custody. If no contract ever existed between Brand and Budget, Weber's sworn statement must also include confirmation of that fact. Failure to comply with this order may result in a finding of

---

[4] This may be explained by their fundamental misconception, benevolently, of what federal discovery rules required them to do in the first place. In their objection, defendants assert that their most recent document productions were made only "out of an abundance of caution and not because they were at all relevant or probative of any of the claims in this action." (Def. Mem. 22, Dkt. No. 193). The statement belies, at best, defendants' fundamental misunderstanding of Judge Mann's orders and their responsibilities. More to the point, if they had a good faith objection to production, which the Court finds they did not, it was up to them to object and for Judge Mann to rule, and not for defendants to unilaterally resolve.

contempt.

(Mem. & Order, Mann, M.J. 10, Dkt. No. 137). These were instructions for the *original* Weber affidavit, which, Judge Mann found, were not followed; it was the Fourth Order that laid out instructions for the supplemental affidavit. That Order provided that:

> This supplemental affidavit must specifically confirm whether, following a diligent search, he has produced all responsive documents in his possession, control or custody. In order to avoid further obfuscation, the supplemental sworn statement must utilize the exact phrase "produced all responsive documents in my possession, control or custody" and must address whether any responsive documents have been destroyed or misplaced. Moreover, the supplemental affidavit must identify and correct any and all errors contained in the Weber Affidavit.

(Mem. & Order, Mann, M.J. 10, Dkt. No. 166). Destiny or not, Weber did not comply.

Analysis begins with the evasive representations by defendants that, while some inconsistencies may exist in the affidavits, nonetheless, those inconsistencies should have been resolved by Sentry through depositions of Weber. (Def. Mem. 19, Dkt. No. 184). This proposition wholly ignores the fact that, when ordered to make a sworn response by a federal judge, the responsibility for true and complete averments falls upon the party doing the swearing. Indeed, this proposition advances a startling absolution for untruthful assertions in an affidavit: the availability of other discovery devices to impeach the affiant excuses the affiant for dissembling. Relatedly, contrary to their own objection, the self-recognized "weaknesses" in the Weber affidavits establish that the words of Judge Mann's

11

orders did not pre-destine Weber's noncompliance. Second, in contravention of the Second Order, neither the original nor supplemental Weber affidavit affirmed that no contract ever existed between Brand and Budget. Nor had a copy of any contract ever been produced, *see* (Pl. Mot., Dkt. No. 166-1), leaving open the question the affidavit was supposed to close. Lastly, as defendants note, the supplemental Weber affidavit *did* (repeatedly) employ the phrase "produced all responsive documents in my possession, control or custody." The sin, of course, is that these affirmations proved *untrue*, when Judge Mann found that later-produced documents were responsive notwithstanding Weber's averments otherwise. This hollow incantation of the words of compliance sought by Judge Mann's orders, rather than douse it, only added fuel for the fire.

Moving to a blunderbuss, defendants argue, generally, that the sanctions recommended are not supported by the record or legal precedent. They cite a series of cases where default judgments or preclusion orders were entered as sanctions, and attempt to distinguish them. As an example, defendants seize on Judge Mann's quotation of *Nieves v. City of New York*, 208 F.R.D. 531, 536 (S.D.N.Y. 2002), protesting that *Nieves* presented a much more vexing discovery dispute than the instant case. *See* (Def. Mem. 15–16, Dkt. No. 184). In *Nieves*, defendants note, that, unlike themselves, the sanctioned parties made little effort to participate in the case. Theirs, they say, was not the failure to litigate, but the failure to do so on the schedule ordered by the magistrate judge. (*Id.* at 16). It is more misdirection. Judge Mann simply quoted *Nieves* for the general principle that "[a]s long as [defendants]

fail[] to comply with discovery orders, the merits of th[e] case elude determination."
(R&R 14, Dkt. No. 179). Judge Mann's orders and sanctions have never been just
about time and schedules. Time has been a prism illuminating the full color of
defendants' evasion and obstruction of discovery.

Next, defendants urge that, because Judge Mann "failed to consider whether
a lesser sanction was appropriate," the sanctions of preclusion or dismissal cannot
be imposed. *See* (Def. Mem. 12, Dkt. No. 184). This is wrong both as a matter of law
and of fact. Quite to the contrary, "district courts are not required to exhaust
possible lesser sanctions before imposing dismissal or default if such a sanction is
appropriate on the overall record . . . ." *S. New England Tel. Co. v. Global NAPs,
Inc.*, 624 F.3d 123, 148 (2d Cir. 2010). But, more to the point, as the record here
makes painful, Judge Mann, in fact,  deferred consideration of sanctioning
defendants for their violation of the Second Order for the express purpose of
determining—based on the content of the supplemental Weber affidavit—which
(and whether) sanctions might be appropriate. She went the extra mile, giving
warnings and opportunities to cure. Plus, the proper warning shots were fired
across the bow. Judge Mann noted in her Second Order that defendants risked
sanctions "including, but not limited to monetary sanctions and/or entry of default
judgments against them . . . ." (Mem. & Order, Mann, M.J. 10, Dkt. No. 137).
Defendants were on early notice of how serious the consequences might be if
plaintiff's discovery complaints were found well-supported. Furthermore, Judge
Mann's R&R also plainly considers whether lesser sanctions would be effective in

this instance, and concludes that, because "monetary sanctions were not sufficient to deter defendants' persistent disregard of this Court's orders," such lesser sanctions would be of no fair use at this juncture, either. (*Id.* at 17). It is obvious from the record, therefore, that Judge Mann considered the full panoply of possible sanctions—from the least to most severe—and even entertained the idea of not sanctioning defendants further at all. *See* (R&R 9, Dkt. No. 179 ("First, the Court will revisit the issue that was deferred . . . to wit, what additional sanction, *if any*, should be imposed . . . .") (emphasis added)).[5]

Defendants also argue that either default or preclusive sanctions require a showing that Sentry was prejudiced by defendants' conduct, citing *UBS Int'l Inc. v. Itete Brasil Instalacoes Telefonicas Ltd.*, 09-civ-4286, 2011 WL 1453797 (S.D.N.Y. 2011),. (Def. Mem. 17, Dkt. No. 184). A showing of prejudice is always powerful, but, as *UBS* demonstrates, is hardly essential. *UBS* itself imposed a sanction of preclusion against noncompliant defendants on a claim related to their failure to produce documents, even without a showing of prejudice.[6] In that respect, *UBS* is on

---

[5] Defendants note that Sentry seeks a judgment in excess of $9 million against them and suggest, therefore, that sanctions bearing on the outcome of this case would be incommensurate to any offense committed. *See* (Def. Mem. 14–15, Dkt. No. 193). But, the question of commensurability is concerned with meeting defendant conduct with an appropriate penalty, not with the amount in controversy. Parties do not become less culpable for their behavior because more money is at stake. Even an entry of default against defendants, were it deemed appropriate in response to defendants' misconduct, would not summarily deprive defendants of $9 million, as defendants suggest; an inquest on damages would follow. But, with the less severe sanction the Court adopts, there is an additional buffer to the award of damages. Damages could only be awarded *after* it had been determined that one or more of the defendants had breached a contract with Sentry.

[6] It bears noting that defendants, still playing the same dissembling tune on their banjo,

14

all-fours with the determination recommended by Judge Mann. Indeed, *UBS* does not foreclose the adoption of the alternative default judgment recommendation; the Second Circuit has conclusively held that prejudice need not be shown in order to sustain even that ultimate sanction when supported by the record. *See S. New England Tel. Co.*, 624 F.3d at 148–49 (citing *Nat'l Hockey League*, 427 U.S. at 639). Moreover, even if a showing of prejudice *were* required to support these sanctions, this Court is most satisfied, upon *de novo* review of the record, that Sentry has been prejudiced, substantively and practically, by defendants' willful conduct, obstruction, obfuscation, and dissembling.

Finally, defendants accuse Judge Mann of bias and misrepresentation of fact. *E.g.* (Def. Mem. 9, Dkt. No. 184 ("the Magistrate issued a Memorandum and Order, the language of which reflected less than an objective and impartial analysis.") (internal citations omitted)). By and large, defendants' recitations amount to quibbling of no real consequence. For example, they assert that "the Magistrate had no basis whatsoever to assume that I had left at 2:37 P.M. when I in fact remained until 2:50 P.M." (*Id.*) (also taking issue with Judge Mann's use of the word "reportedly" when noting that defense counsel was "reportedly . . . about to leave on vacation")). The Court, in conducting its *de novo* review of the record, finds no

---

directly quote large sections of *UBS* but truncate their excerpt to omit the following, conclusive sentence: "The appropriate remedy, then, is to preclude the MUSP Defendants from asserting that the funds in the subject UBS accounts are in any way related to any advances that the MUSP Defendants may have made on behalf of Itete Brasil." *UBS*, 2011 WL 1453797 at *4.

instance of bias, nor any error in her conclusions. That a party is unhappy with a judge's findings, after her consideration of the record, and points to the analysis underlying her findings as evidence of bias, has zero probative value in showing bias or impropriety.

In sum, the objections interposed by defendants are meritless. The Court finds ample reason, on *de novo* review, to accept Judge Mann's findings. In considering her alternative recommended sanctions—of issue preclusion as opposed to entry of default judgment—the Court concurs with Judge Mann that, "[s]ince most of the delayed and/or outstanding discovery relates to the Insured Weber Entities, and, thus, Sentry's alter ego claim, this Court would be justified in entering an order precluding defendants from offering evidence opposing Sentry's alter ego claim." (Mem. & Order, Mann, M.J. 14–15, Dkt. No. 160). The recommended relief is just, well-tailored to the misconduct of defendants, and supported by the record. The sanction comes after more than fair warning. It is the relief the Court orders.

## Conclusion

Upon *de novo* review, the Court finds no clear error in Judge Mann's Report and Recommendation. Very much to the contrary, the Court finds itself in full agreement with Judge Mann's analysis, reasoning, and with her conclusion that defendants and their counsel have more-than-earned the recommended sanctions. Consequently, the Court orders that defendants shall be precluded from offering evidence opposing Sentry's alter ego claim, for the purposes of both summary judgment and trial. To the end that Judge Mann's R&R reaches this result, it is

16

adopted as the opinion of the Court. Likewise, the monetary sanction, in the amount

agreed upon by the parties, is also affirmed.

       **SO ORDERED.**

**Dated:**         **Brooklyn, New York**
                 **October 12, 2013**

                                      s/ ENV

                                 **ERIC N. VITALIANO**
                                 **United States District Judge**